IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MELANIE NICHOL,

        Plaintiff,

  vs.

CITY OF SPRINGFIELD; GINO
GRIMALDI, in his individual
and official capacities; and
RICHARD L. LEWIS, in his
individual and official
capacities,

        Defendants.

No. 6:14-cv-1983-AA
OPINION AND ORDER

---

Michael V. Owens
Owens & McBreen, P.C.
319 SW Washington St., Ste. 614
Portland, OR 97204
    Attorney for plaintiff

Jonathan M. Hood
Andrea D. Coit
Jens Schmidt
Harrang Long Gary Rudnick P.C.
360 East 10th Ave., Ste. 300
Eugene, OR 97401
    Attorneys for defendants

AIKEN, Chief Judge:

In this retaliation and wrongful discharge action, defendants City of Springfield, Gino Grimaldi, and Richard Lewis obtained a number of documents that had been timely designated by plaintiff Melanie Nichol as protected work product. Plaintiff moved for an order modifying defendants' subpoena and requiring defendants to destroy the protected materials in their possession. For the reasons set forth below, plaintiff's motion is granted.

## BACKGROUND

From 2004 to 2013, plaintiff was a dispatcher for the Springfield Police Department in Springfield, Oregon. Compl. ¶ 7. From 2010 to 2012, plaintiff alleges she reported several fellow employees for harassment and sexual misconduct. Compl. ¶¶ 8-11, 17-18. In May 2013, plaintiff was placed on administrative leave pending investigation of allegations she had provided false information related to two of her complaints. Compl. ¶¶ 26-27. In June 2013, plaintiff was fired as a result of that investigation. Compl. ¶ 35.

After she was fired, plaintiff communicated extensively with her friend John Umenhofer ("Umenhofer"), a former sergeant who was fired from his position with the Springfield Police Department in June 2014. In October 2014, Umenhofer filed a federal lawsuit against the same defendants named in this action.[1] Like plaintiff,

---

[1] Umenhofer's lawsuit also named one additional defendant.

2 - OPINION AND ORDER

Umenhofer alleged defendants retaliated against him after he reported fellow employees for sexual misconduct.

During discovery in this case, plaintiff produced a number of documents related to her correspondence with Umenhofer. Specifically, she produced 16 pages of email correspondence between plaintiff and Umenhofer; 27 pages of attachments to those emails; and 78 pages of hard-copy documents Umenhofer had given to plaintiff. Doc. 27 at 2. Plaintiff objected, however, to producing certain documents Umenhofer had created. On July 10, 2015, she served defendants' counsel with a privilege log asserting these documents were protected work product.[2] Doc. 27-3 at 2.

The Umenhofer Documents consist of two subgroups of materials. The first subgroup is a set of emails and documents created by Umenhofer to advise plaintiff regarding this lawsuit. Plaintiff alleges Umenhofer sent these emails and documents because she sought his "general advice" on filing a lawsuit against the City. Doc. 26 at 2. However, she asserts once she retained counsel, she "did not rely on Mr. Umenhofer's assistance to create any legal filings or other documents in [this] case" and is not "certain [she] even read all of the documents Umenhofer sent to [her]." Id. The second subgroup of documents[3] consists of emails and

---

[2] The documents plaintiff asserts are work product will be collectively referred to as the "Umenhofer Documents."

[3] One of the documents in this second subgroup is arguably not covered by the descriptions in plaintiff's Privilege Log.

3 - OPINION AND ORDER

attachments created by Umenhofer or jointly by Umenhofer and plaintiff in connection with plaintiff's licensure revocation proceedings before the Oregon Department of Public Safety Standards and Training ("DPSST").[4] Plaintiff alleges because her attorneys in this case did not agree to represent her in the DPSST investigation until "[s]hortly before" the contested case hearing, she "sought Umenhofer's assistance both to generally refute the DPSST's proposed license revocation, and specifically to help [her] make arguments and present evidence at the DPSST Hearing." Id. at 2-3.

In October 2015, defendants' counsel subpoenaed Umenhofer for a deposition. The subpoena directed Umenhofer to produce "[a]ll documents, including text printouts, email, facebook postings or other written documents between John Umenhofer and Melanie Nichol from January 2012 to present." Doc. 27-1 at 1. Although this subpoena was served on Umenhofer's personal attorney, defendants'

---

However, as plaintiff points out, the Ninth Circuit uses a "holistic reasonableness analysis" rather than a bright-line rule to assess the timeliness of privilege claims. Burlington N. & Santa Fe Ry. v. U.S. Dist. Ct. for the Dist. Of Mont., 408 F.3d 1142, 1149 (9th Cir. 2005). Moreover, defendants do not argue that single document is discoverable even if the rest of the Umenhofer Documents are not. Accordingly, this Opinion and Order applies to all the Umenhofer Documents as described in Plaintiff's Motion for a Protective Order (doc. 25 at 6).

[4] In October 2014, DPSST initiated a process to determine whether to revoke plaintiff's license to work as a telecommunications officer in Oregon. This process culminated in a contested case hearing in April 2015.

4 - OPINION AND ORDER

counsel inadvertently failed to serve a copy of the subpoena on plaintiff's counsel. Doc. 29 at 3.

When Umenhofer arrived at the deposition, he turned over to defendants' counsel a stack of materials. Defendants' counsel made copies of the documents, including the subpoena, and provided them to plaintiff's counsel. The parties took a 45-minute break for lunch and document review before returning to start the deposition. During the break, plaintiff's counsel read the subpoena and discovered the materials Umenhofer had produced contained the Umenhofer Documents. Plaintiff's counsel objected to the use of any of the Umenhofer Documents during the deposition. The parties agreed to suspend the deposition pending a determination of the discoverability of the Umenhofer Documents.

Plaintiff filed the instant motion for a protective order and to modify defendants' subpoena, seeking a determination the Umenhofer Documents are protected work product. Defendants then submitted the Umenhofer Documents to the Court for in camera review.

## STANDARDS

The work product rule is "not a privilege but a qualified immunity protecting from discovery documents or tangible things" prepared in anticipation of litigation. Admiral Ins. Co. v. U.S. Dist. Court for Dist. Of Ariz., 881 F.2d 1486, 1494 (9th Cir. 1989). The work product doctrine has its roots in Hickman v.

Taylor, 329 U.S. 495, 512 (1947), in the which the Supreme Court held the discovery provisions of the Federal Rules of Civil Procedure did not entitle an opposing litigant to "invad[e] the privacy of an attorney's course of preparation[.]" In 1970, work product protection was codified as Federal Rule of Civil Procedure 26(b)(3). This provision, which for purposes of this decision has remained substantially unchanged since enactment, provides:

> (A): Documents and Tangible Things. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to rule 26(b)(4) [regarding experts], those materials may be discovered if:
>
> (i) they are otherwise discoverable under Rule 26(b)(1); and
>
> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Fed. R. Civ. P. 26(b)(3)(A). Rule 26(b)(3) expanded on the rule announced in Hickman in at least one significant way — by making clear work product protection could apply to materials prepared by non-lawyers. See 1970 Advisory Committee Notes to Fed. R. Civ. P. 26(b)(3) (identifying "confusion and disagreement as to the scope of the Hickman work-product doctrine, particularly whether it extends beyond work actually performed by lawyers" as one of the "major difficulties visible in the [pre-1970] case law"). The party asserting the privilege bears the burden of demonstrating

work product protection applies.  <u>Riverkeeper v. U.S. Army Corps of Engineers</u>, 38 F. Supp. 3d 1207, 1217 (D. Or. 2014).

<div align="center">DISCUSSION</div>

Defendants contend the Umenhofer Documents are not protected work product for three reasons.  First, they argue the Umenhofer Documents do not fall within the scope of Rule 26(b)(3) because Umenhofer was not plaintiff's representative when he created them, and therefore the documents cannot be protected "work product." Second, defendants assert they have overcome any assertion of work product protection by showing a substantial need for the materials and an inability to obtain their substantial equivalent by other means.  Finally, defendants aver plaintiff has waived any right to work product protection through selective disclosure and putting at issue the contents of the Umenhofer Documents.

<u>1. The Umenhofer Documents are Work Product</u>

The Ninth Circuit has articulated a two-part test to determine whether materials qualify for work product protection:  "(1) they must be prepared in anticipation of litigation or for trial, and (2) they must be prepared by or for another party or by or for that other party's representative." <u>In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.)</u>, 357 F.3d 900, 907 (9th Cir. 2003) (quotation marks omitted).  Defendants argue the Umenhofer documents do not satisfy the second prong because Umenhofer did not act as plaintiff's representative either in this action or in the

7 - OPINION AND ORDER

DPSST hearing.[5]

Interpretation of the Federal Rules of Civil Procedure begins with the plain meaning of the text. <u>Whittlestone, Inc. v. Handi-Craft Co.</u>, 618 F.3d 970, 973 (9th Cir. 2010). Here, the relevant text protects materials prepared "by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A). The plain meaning of this broad provision encompasses four categories of materials: those prepared (1) by a party; (2) by a party's representative; (3) for a party; or (4) for a party's representative. <u>Torf</u>, 357 F.3d at 907; <u>see also</u> <u>Republic of Ecuador v. Mackay</u>, 742 F.3d 860, 867 (9th Cir. 2014) ("the phrase 'by or for' . . . [is] somewhat broad on [its] face"). The Umenhofer Documents fall into the third category, as it is undisputed Umenhofer prepared the materials for plaintiff, a party to this litigation.

Defendants urge this court to conclude the Umenhofer Documents are not protected work product because (1) plaintiff was represented by counsel in both this action and the DPSST hearing,

---

[5] Defendants do not argue the Umenhofer Documents were not prepared in anticipation of litigation. It is well-settled that adversarial administrative proceedings such as the DPSST hearing are "litigation" within the meaning of Rule 26(b)(3). <u>Nevada v. U.S. Dep't of Energy</u>, 517 F. Supp. 2d 1245, 1260 (D. Nev. 2007); <u>cf.</u> <u>Menchu v. U.S. Dep't of Health & Human Servs.</u>, No. 3:12-CV-01366-AC, 2014 WL 1217128 at *4 (D. Or. 2014) (interpreting 5 U.S.C. § 552a(d)(5), which protects from disclosure materials "compiled in reasonable anticipation of a civil action or proceeding," to apply to preparation for administrative hearings and noting that quasi-judicial administrative proceedings are "functionally similar" to litigation).

8 - OPINION AND ORDER

and thus an attorney "could have been involved" in the communications with Umenhofer; (2) Umenhofer did not act at the behest of plaintiff's attorney; and (3) plaintiff testified she did not rely on Umenhofer's advice, at least with respect to this lawsuit. Def.'s Resp. Pl.'s Mot. Prot. Ord. at 5. It is true courts generally have applied Rule 26(b)(3)'s protections to materials prepared by a non-lawyer where the non-lawyer either acted as a party's representative or acted under instructions from a party's representative. See Hertzberg v. Veneman, 273 F. Supp. 2d 67, 77 (D.D.C. 2003) (protecting investigatory materials compiled by Forest Service investigators at direction of Forest Service attorney); Nelsen v. Geren, No. 08-CV-1424-ST, 2010 WL 3491360 at *4 (D. Or. Aug. 31, 2010) (work product protection applied because internal investigator, though not an attorney, was plaintiff's "representative"); Devries v. Advanced Am. Constr., Inc., No. 3:13-cv-01001-PK, slip op. at 8 (D. Or. Sept. 11, 2014) (protecting materials prepared by a non-lawyer friend who acted as plaintiff's representative). The dearth of case law matching the precise fact pattern here, however, does not authorize the court to ignore the plain meaning of Rule 26(b)(3). As one commentator has explained, although most work-product cases discuss materials generated by attorneys and agents of attorneys,

> those cases should not be read as casting doubt on the clear scope of Rule 26(b)(3). Instead, their language should be considered as identifying the creator of the work product in that case or as reflecting the norm.

9 - OPINION AND ORDER

> Since most work product is attorney-generated, the language of the cases may merely reflect this typical occurrence.

John W. Gergacz, Attorney-Corporate Client Privilege § 7:21 (3d ed. 2015).

Defendants cite <u>Largan Precision Co. Ltd. v. Genius Elec. Optical Co., Ltd.</u>, No. 13-cv-02502-JD, 2015 WL 124557 at *4 (N.D. Cal. Jan. 8, 2015), for the proposition that "attorney involvement — or the lack thereof — is far from irrelevant" in evaluating a claim of work product immunity. The <u>Largan</u> court concluded "the involvement of attorneys should be considered as part of the 'anticipation of litigation' prong of the [Ninth Circuit's two-part 26(b)(3)] test[]." <u>Id.</u> at *5. Under this view, attorney involvement effects a presumption a document was prepared in anticipation of litigation, and "a party's burden to demonstrate a document's litigious purpose increases — all other things being equal — as attorney involvement in creating the document decreases." <u>Id.</u> (quoting <u>United States v. ISS Marine Servs., Inc.</u>, 905 F. Supp. 2d 121, 134-35 & n.8 (D.D.C. 2012)). Nothing about <u>Largan</u> is inconsistent with the conclusion the Umenhofer Documents are work product. Even assuming a lack of attorney involvement in creating materials imposes a heightened burden on a party to prove they were prepared in anticipation of litigation, plaintiff has met that burden. It is undisputed Umenhofer drafted all the documents at issue to assist plaintiff with either the DPSST hearing or this

10 - OPINION AND ORDER

lawsuit. Accordingly, the Umenhofer Documents qualify as work product under Rule 26(b)(3).

Defendants contend that even if the Umenhofer Documents meet the technical requirements of the rule, they are not work product because Umenhofer is an interested third-party witness in this case. Although Umenhofer's status as a third-party witness does not automatically bring materials he prepared outside the scope of the work product rule, defendants are correct that personal observations of relevant events are not work product. See Brockmeier v. Solano Cnty. Sheriff's Dep't, No. CIV S-05-2090 MCE EFB, 2010 WL 148179 at *6 (E.D. Cal. 2010) (collecting cases indicating material prepared in anticipation of litigation is discoverable to the extent it "disclose[s] only [a] factual account of what occurred on the date of the incident"); Schipp v. Gen. Motors Corp., 457 F. Supp. 2d 917, 924 (E.D. Ark. 2006) ("[A]ny verbatim non-party witness statements are neither privileged nor work product and must be produced.")

An in camera review of the Umenhofer Documents reveals that one of the documents contains two statements about Umenhofer's personal observations of potentially relevant events. However, both of these statements also include Umenhofer's opinions and mental impressions of those events in connection with strategy for plaintiff's lawsuit. The statements of fact and opinion are so intertwined a redacted version of the statements is not a viable

11 - OPINION AND ORDER

option. As a result, I conclude all the Umenhofer Documents qualify as work product.[6]

2. <u>Defendants Have Not Shown Substantial Need or Undue Hardship</u>

"If the work product privilege is found to apply, the burden shifts and the party seeking discovery must show that substantial need of the material exists and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by an alternative method." <u>Garcia v. City of El Centro</u>, 214 F.R.D. 587, 591 (S.D. Cal. 2003); <u>accord</u> Fed. R. Civ. P. 26(b)(3)(A)(ii). Defendants assert substantial need for the Umenhofer Documents on two grounds. First, they argue the documents are "critical" to the claims and defenses at issue in this lawsuit because they contain information about what disclosures plaintiff made to City officials, and when she those disclosures. Def.'s Resp. Pl.'s Mot. Prot. Ord. at 9-10. However, the Umenhofer Documents, all of which postdate plaintiff's firing

---

[6] It is not necessary at this stage to decide whether Umenhofer qualifies as plaintiff's "representative" within the meaning of Fed. R. Civ. P. 26(b)(3)(B) such that any documentation of his "mental impressions, conclusions, opinions, or legal theories" are subject to the heightened protections associated with opinion work product. See <u>Republic of Ecuador</u>, 742 F.3d at 869 n.3 ("Opinion work product . . . . is virtually undiscoverable" (citations and quotation marks omitted)). However, this Opinion should not be read to rule out the possibility Umenhofer acted as plaintiff's representative, particularly with respect to the DPSST hearing before the date plaintiff's counsel agreed to represent her in that hearing.

12 - OPINION AND ORDER

by more than a year, contain no contemporaneous documentation of the disclosures.

Second, defendants assert a substantial need for the documents for the purposes of impeachment. However, they fail to point to any contradictory statements on core issues in the case — for example, they do not assert the Umenhofer Documents show plaintiff has changed her story regarding the fact, timing, or extent of any disclosures. Defendants give a single example of the Umenhofer Documents' purported impeachment value: they point to plaintiff's deposition testimony that Umenhofer did not give her advice regarding this lawsuit. Doc. 27-4 at 3-4. They contend the Umehofer Documents directly contradict this statement. After this court's in camera review, I find the Umenhofer Documents have some limited impeachment value on this narrow point. Although these documents could be construed to undercut plaintiff's deposition testimony, however, the conflict is far from clear or direct. Moreover, any inconsistency between the Umenhofer Documents and plaintiff's testimony is on a collateral rather than core issue in this case; the extent of Umenhofer's assistance to plaintiff is not critical to any of the claims or defenses in this case. Compare Young v. United Parcel Serv., 88 F.R.D. 269, 271 (D.S.D. 1980) (finding "substantial need" on the basis of impeachment value where work product materials allegedly revealed conflicting statements of plaintiffs regarding an issue that "could be an important factor in

13 - OPINION AND ORDER

the trial of this case") with <u>Hamilton v. Canal Barge Co., Inc.</u>, 395 F. Supp. 975, 978 (E.D. La. 1974) (stating "minor discrepancies" insufficient to demonstrate "substantial need" even if materials would have some impeachment value). Accordingly, I find defendants failed to demonstrate substantial need for the Umenhofer Documents.

In addition, defendants failed to meaningfully address the second requirement: they cannot without undue hardship obtain the equivalent evidence by other means. Defendants' only statement regarding this prong of the test is a bare assertion they "clearly cannot otherwise obtain the equivalent evidence[.]" Def.'s Resp. Pl.'s Mot. Prot. Ord. at 11. Actually, Umenhofer appeared at the first scheduled deposition and complied with defendants' subpoena. Defendants have not explained why Umenhofer should not be expected to answer truthfully any questions posed to him at his deposition. Thus, defendants have not explained why deposing Umenhofer is an inadequate alternative means to obtain the same arguably impeaching evidence contained in the Umenhofer Documents.

### 3. Plaintiff Did Not Waive Work Product Protection

Finally, defendants argue the Umenhofer Documents are discoverable because plaintiff has waived work product protection. A litigant waives work product protection if she attempts to use that protection "as both a sword and shield" or puts at issue the content of the protected materials. <u>Frontier Refining, Inc. v.</u>

14 - OPINION AND ORDER

Gorman-Rupp Co., Inc., 136 F.3d 695, 704 (10th Cir. 1998); see also Lambright v. Ryan, 698 F.3d 808, 823 (9th Cir. 2012) (discussing waiver of work product protection in the context of a petition for a writ of habeas corpus). Here, plaintiff has done neither.

As explained above, plaintiff voluntarily produced a set of materials related to her communications with Umenhofer. By producing those materials, defendants argue, plaintiff (1) effectively conceded materials prepared by Umenhofer are not subject to work product protection; and (2) attempted to "have it both ways" by "withholding only the most damaging documents." Def.'s Resp. Pl.'s Mot. Prot. Ord. at 12. The court's in camera review affirms the Umenhofer Documents are qualitatively different from the produced documents: while the Umenhofer Documents contain advice from Umenhofer to plaintiff regarding strategy for her DPSST hearing and this lawsuit, the other documents contain no such advice. For example, one of the produced documents is an email from plaintiff to Umenhofer containing a draft version of the complaint in this case. But there is no indication Umenhofer provided any feedback to plaintiff regarding the complaint; it appears to have been sent to Umenhofer simply for his information. By contrast, the withheld documents contain, for example, "[e]-mail correspondence . . . and attached draft document revisions . . . outlining arguments Plaintiff should make . . . in [her] DPSST hearing." Doc. 27-3 at 2. Umenhofer drafted and revised these

15 - OPINION AND ORDER

DPSST documents. This attempt to carefully separate materials <u>prepared in anticipation of</u> litigation from documents merely <u>related to</u> the litigation does not amount to selective disclosure.

Nor did plaintiff waive work product protection by putting the contents of the Umenhofer Documents at issue. A court analyzing "at issue" waiver must consider whether (1) the party is asserting the protection "as the result of some affirmative act, such as filing suit"; (2) "through this affirmative act, the asserting party puts the privileged information at issue"; and (3) "allowing the privilege would deny the opposing party access to information vital to its defense." <u>United States v. Amlani</u>, 169 F.3d 1189, 1195 (9th Cir. 1999) (citation and quotation marks omitted). Although plaintiff is asserting work product protection after filing this action, the second and third prongs of the "at issue" waiver test are not met here. First, plaintiff did not put the contents of the Umenhofer Documents at issue by filing this lawsuit, as she does not "rely on the work product in any way to justify [her] right to recovery." <u>Frontier Refining</u>, 136 F.3d at 704. Second, as explained in Section 2 above, the Umenhofer Documents are not central to this lawsuit; accordingly, allowing the privilege will not deny defendants access to any critical information. Plaintiff has not waived work product protection for the Umenhofer Documents.

<p style="text-align:center">CONCLUSION</p>

16 - OPINION AND ORDER

Plaintiff's motion for a protective order and to modify defendants' subpoena (doc. 25) is GRANTED. The Court:

> 1. MODIFIES defendants' October 12, 2015, subpoena issued to John Umenhofer to exclude the Umenhofer Documents; and
>
> 2. ORDERS defendants, and their attorneys and agents, not to disclose or use copies of the Umenhofer Documents already obtained, and to destroy all copies, summaries, transcriptions of, or notes about, any such documents in their possession, custody, or control.

Defendants are hereby ordered to modify the subpoena to Umenhofer to exclude the Umenhofer Documents and to destroy all privileged materials in their possession.

IT IS SO ORDERED.

Dated this 18th day of December 2015.

                                            /s/ Ann Aiken
                                            Ann Aiken
                                    United States District Judge